Koch v. American Interstate Insurance Actually, it's v. U.S. Sorry It's v. U.S. My name is Steve Frank from the Justice Department on behalf of the appellant the United States. The district court in this case made three significant errors, each one of which would warrant a remand in this case. First, the court applied the wrong legal standard with regard to pre-existing conditions. Second, the court virtually ignored an abundance of evidence about pre-existing conditions. And third, the court unduly limited the testimony of the government's expert witness so as really to disregard all of his testimony. And all three of those are interrelated. And when you add them all up, the government really was handicapped in this case, had its hands tied behind its back. It's Mr. Koch who's handicapped. I beg your pardon? I think it is your plaintiff here who's handicapped. Well, the plaintiff, I think what's really fair in this case is you can't read the record. This plaintiff, unfortunately, had very serious problems before this accident. And, in fact, they were the same problems after the accident. How old was he at the time of the accident? I didn't see that in the briefing. Counsel can probably correct me. I think he was 52, 53, somewhere in that range. You're taking into account that we must review these factual findings for clear error. Yes, sir. We can't reverse a district court judge like this unless we are firmly convinced that there's a mistake there. It seems to me that that makes it very difficult in this case. If we were trying it ourselves, we might not make these findings. But I'm not sure we can just reverse because you find some evidence to the contrary. That's largely true, Your Honor, except that the first error that we argue is an error of law. So that kind of deference does not apply. We say that the district court applied the wrong legal standard. The other two, which is that Judge Monroe ignored the great abundance of evidence of a pre- Yes, sir. She applied the standard which would have allowed you to show that he would have become disabled eventually anyway because of his preexisting conditions. And she did not find that you had proven that. That's correct. And our position is that that was the wrong legal standard. The court applied a legal standard which shifted the burden to the government and applied a legal standard which is applied in this Marra case out of the Second Circuit, and she applied like the second exception in that Marra case which shifted the burden to the government to show that his injury inevitably would have occurred. Our position is you never get to we're not really clear why you got to the second exception to the Marra case. Our position is that in the Fifth Circuit, applying the Fifth Circuit law in Henderson, the law is that it's plaintiff's burden, and plaintiff does not take issue with this, it's plaintiff's burden when there's a case of a preexisting condition. This is what Henderson said. In fixing damages proximately caused by the negligence where there is a preexisting disease, the recovery is confined to those injuries which are due to its enhancement or aggravation and does not include injuries which result from the original condition. In other words, it was the government's position in this case that we don't have to be looking at the second exception to a Second Circuit case. We can look to Fifth Circuit law, and the law is that it's plaintiff's burden to show what was the enhancement or the aggravation of the injury that occurred. The Fifth Circuit law is similar to Marra, I think. Doesn't it require you to take the burden on if the man was not disabled before the accident and the district judge finds that the accident disabled him, caused him to become disabled, isn't it then your burden to show that he would have reached the same amount of disability anyway? Or not as much. Discount. I understand. I think the key, and this is where I think the district court didn't make these fine distinctions, and I want to emphasize here. There's a difference between where there is a latent preexisting condition and where that preexisting condition is already manifest. And this is the key to this case. We spelled it out in our briefs, in particular in our reply brief at page four, and in the footnote we cited the law. Let me just briefly explain this. When there is a latent preexisting condition, and this is the law, the Fifth Circuit, the Second Circuit, and in general maritime law. When it's latent, in other words, it hasn't appeared yet. It's asymptomatic is the way they say it. Well then, if something happens later, okay, then in that case the defendant is, can be liable for all of the injuries because under the old phrase that we all learned in law school, Professor Sutton taught me, which was that you take the plaintiff as you find him. Okay? The problem here is that the district court applied that kind of latent theory. In other words, saying he had this latent preexisting condition and therefore shifted all of the damages over to the government and shifted the burden of proof. That was the mistake because in this case plaintiffs' preexisting conditions were not latent. They were not asymptomatic. They had already manifested themselves. I understand that was what the district court did. I thought the district court applied the rule that says that if the preexisting conditions, together with the accident, caused the plaintiff to become disabled, then you have to, the defendant has to show that he would have reached that stage of disability anyway. Right. Or discount what part of it the defendant's negligence covers. It's complicated. I think we've laid it out in our brief that what the district court did would be correct, okay, which is to shift the burden and to cause the government to be responsible for all of his injuries. If his injury was latent, in other words, it had not appeared, then we take him as he is. If we injured him, what is it? You take it. You break it. It's yours. You own it. Is there a legal definition for latent? I mean, I don't know. I mean, he was still working full time. He was going up and downstairs looking at these old ships or whatever it was that needed help. So even though he had some problems, was it latent to the extent that he was still working full time and I don't think there's any evidence that he was disabled in any way in performing his job? I think that the key is is the phrase not so much latent, which is a little ambiguous, as Your Honor puts it, but asymptomatic. This was a gentleman who for 10 years, longer than 10 years, had been going to doctors in terrible pain, seeking pain medication. Every doctor that he saw told him he needed a knee replacement surgery. He applied for he sought disability. What pain medication was he taking? I don't recall off the top of my head. It's in here. The general, I think VIA something. Some serious pain medication. Some serious. And he was constantly complaining of pain. Prescription medication? Prescription. Yes. Yes, ma'am. Steroid injections? I don't know about that. All that. I mean, I look at. Yeah. If the court would look at. Let me just say that. Yes, ma'am. It's really, this is a pretty, a case of a pretty seriously affected person. And, you know, there are a lot of times when people have MRIs that show serious systemic problems, but for whatever reason, they tough them out and they don't get the ultimate surgical treatment. Probably in part because surgery doesn't always help. So, although it's definitely a preexisting condition, it may not have been a disabling condition. And applying for a disability is a different thing from, you know, getting damages for the causation that resulted from this event. I understand what you're saying, Your Honor. And my brother, bless him, lives in upstate New York, and the doctor keeps telling him he needs to get his knees replaced, and he doesn't want to do it. And he's entitled not to do it. But if somebody runs into him, are they going to be liable for all of his problems just because he was too proud to do it? And I think the point I wanted to make, Your Honor, and the point that the government is making, we're not saying that we might not be liable to this gentleman for some damages, okay? He was awarded $2.8 million, $1.3 million in pain and suffering, and we might be liable for a certain percentage of it. What the district court made an error, and why it needs to go back, is that the court failed to apportion how much of that damages was due to already manifest, he already had these problems, conditions before he slipped and fell in the U.S. ship, and how much was aggravated afterwards. And that's what the court needed to do. Well, looking at Judge Morgan's findings and conclusions here, it's just in two little paragraphs. Defendant is not liable for injuries the plaintiff would have suffered even if the second accident had not occurred. And she cites Schoenbaum. And then when she quotes the defendant bears the burden of proving the damages that would have inevitably caused, she cites Maurer. And in the footnote it says, both parties cite this case in their trial memoranda. Yeah. I mean, Maurer, we cited that, obviously, because it's cited for when there's a, what's called an eggshell plaintiff. And an eggshell plaintiff is somebody who has a latent but not manifest injury. Well, how come she didn't feel obliged to discuss latent versus manifest at all here? Well, I think that was an error. Plaintiff does. Plaintiff, in defining an eggshell plaintiff, he says it's a plaintiff who has a latent but not yet manifest. He says that in his brief. And that's what's critical here. The court also made other errors. That's an error of law. I think it's clear, and all we're asking is that it go back and that there be some apportionment. We may be liable for tens of thousands of dollars or hundreds of, I don't know what, but it needs to be apportioned, because this gentleman, as Dr. Wilson said, he had in stage bone-on-bone osteoarthritis before this accident. He says it was as bad as it gets. I don't know how it gets any worse than that. That's what he had before the accident, and you've got to take that into account. And that's the problem with the second part, is that the district He and his main physician and he and his wife, they all testified he was not disabled before this accident. No, I think one of his physicians, Judge Moran, has tried to put in disability for him. And this is the other point that I want to make, is that none of these physicians based their testimony on any objective medical evidence. His main physician, Dr. Finger, said he saw no trauma, no physical trauma following the accident. They all based their testimony on the subjective opinion of plaintiff who said before this accident, I was great. I was doing plumbing. After the accident, not so much. So there is no Well, but if you're not saying that he's lying, then the fact that you don't have external bruises or evidence of muscle strain does not mean that the accident didn't further increase the herniation on the discs. Well, this Court in Biss, Solomus, which we cited in our brief, was looking for objective medical evidence of aggravation. There is no objective medical evidence. And again, I'm not saying that we're not liable for something. But we've got to know we're not liable for it all. All of it. That's what I'm saying. And the other thing, there's errors here, Your Honor, Judge Dennis, that are more than just little errors. The district court said there is no evidence. She said there is no the only evidence, record on appeal 1231, the only evidence presented by the government of plaintiff's claim that was preexisting condition was the trial testimony of our expert. She said that You can go on and rebuttal if you like. No, no, no. That was the only evidence that was incorrect. There was a lot more evidence than that. If I might reserve a little bit of time for rebuttal. Yes. Okay. Thank you very much. Okay. Mr. Abramson. Good morning, Your Honors. May it please the Court. David Abramson and Ian Taylor with trial counsel with me on behalf of the Koshas, the appellees in this matter. Koshas. Okay. Sorry. I'm sorry. Well, I pronounced them Koch. I did, too, until they corrected me. Okay. How did you pronounce it? Kosh. Kosh. Well, first of all, what I would like to do is address some of the factual errors that counsel just recited to you. Number one, it wasn't an error because he wasn't sure, but Mr. Koch was 54 years old at the time of the accident. Actually, Judge Morgan says 56. That may have been at the time that the opinion was written, I think. That's okay. Either way. Mr. Koch never applied for disability prior to the incident giving rise to this claim. Counsel indicated that Dr. Moran had put it in for him. That's simply not accurate. And Mr. Koch was not on narcotic pain medication at the time of this accident. Let me address the legal error issue that the United States brings to this court and indicates and suggests that the district court, Judge Morgan, misapplied the legal standard regarding exacerbation or aggravation of a preexisting condition. As your honors, I believe, indicated, Mr. Koch was not disabled at the time of this accident. He was carrying on. All his activities of daily living and beyond, doing extremely heavy manual labor at home, performing all of his job duties at work, did not miss work. There is absolutely no evidence to suggest that he was disabled or incapacitated in any way. It is true and undeniable that he had preexisting osteoarthritis in both of his knees, that he had a prior cervical fusion in his neck, and that he had some arthritic changes in his neck. The medical testimony following this accident, and Dr. Moran, the court should understand, saw Mr. Koch both before this accident and after this accident. In 2008, he performed an anterior cervical fusion on him. He saw him subsequent to this accident. And his testimony is unequivocal, and I hate to spend time reciting his testimony, but I'll just point the court to the record at pages 935 through 938, 969 through 973, and 1006 through 1009 with respect to Dr. Moran. And the court will see that Dr. Moran testifies unequivocally that as a result of this accident, Mr. Koch sustained a new injury at C6-7 being a herniation, and then he aggravated the underlying degenerative condition at C5-6. And he relates the aggravation and the new injury to this accident. He relates the surgery that he performed, the anterior cervical discectomy infusion, at those levels to this accident. And unfortunately, that surgery failed, and he had to undergo, which at the time of trial, he said he was going to have to undergo a posterior approach, basically a redo, which occurred subsequent to the trial of this matter. This is why people don't get surgery for this stuff. Yeah, I agree. And it's a 50-50 proposition. Unfortunately, in this case, Mr. Koch was left with little alternative but to undergo the initial surgery following this accident because he was suffering from extraordinary symptomatology in his upper extremities. And, in fact, the knee replacement that Dr. Finger saw him for before he saw Dr. Moran had to be postponed because of the urgent nature of having to undergo the cervical surgery. Dr. Finger did not want to do the knee replacement before the cervical surgery was done. Similarly, Dr. Finger, who... According to the District Court's findings, do we have evidence that the District Court took into consideration these prior injuries in determining damages? Well, because the District Court talks about in detail all of the things that Mr. . . . First of all, she acknowledges that he had pre-existing arthritis. But the District Court goes to great pains, I think, because of the Mora v. U.S. decision and the fact that that case was remanded because the District Court was not so explanatory with respect to what occurred in that case, to indicate that Mr. Koch was capable of doing all those things that I recited previously and that one of your honors also indicated he was capable of doing before this accident and after this accident. He was basically an invalid and unable to do any of those things. Well, until the surgeries occur. Until the surgeries. If he gets knee replacements, he'll be much better. There's no question about that. Right. And the point is the knee surgeries in and of themselves would not disable him. But Dr. Moran, in his testimony, which is on the pages that I recited to you, indicates that the neck condition for which he operated on and which failed and for which he needed another surgery and the carpal tunnel procedures which conditions occurred as a result of the first neck surgery post-accident would disable him more likely than not. Maybe that was the doctor's problem. But I guess my question is this related to what Judge Prado said, though, because looking at the findings here, the judge says sort of minimally, well, he had preexisting osteoarthritis. And the fact is he had extremely serious preexisting arthritis in his knees such that he probably couldn't have gotten hired by most companies had they been informed about this. So there seems to be an intuitive, serious, factual basis for saying that these aggravated a preexisting condition. Whether he considered himself disabled might be one thing, but in fact he had a condition that, for all intents and purposes, was a deterioration of an average human structure, and therefore why should they be responsible for the entirety of the damages? They are not responsible for the entirety of the damages. $2.8 million, it seems like the entirety to me. $1.3 million for his pain and suffering. Right. And what I would submit to Your Honor is the district court did not find that they were responsible for the osteoarthritis. The district court found that they were responsible for the aggravation and exacerbation of that condition. Well, that's what I don't find in this opinion because she said they did not bear the burden of proving the extent of the damages that the preexisting condition would inevitably have caused. Correct. They didn't prove exactly. We proved. So she did not discount the damages at all based on aggravation theory. No, she did not indicate that she made a discount. In other words, she didn't come out and say, I discount this for such and such a reason. Were you asking for more than $2.8 million? Yes, we were. And this record, this trial record, does not do justice to the testimony of the plaintiffs and the plaintiffs' employer or to the doctors. The testimony from the plaintiffs was incredible, frankly, and it was credible. And the court looked at all of the witnesses. How much were you asking for? For pain and suffering, as I recall, we were asking for $1.5 million. Okay, and how much were you asking for for medical or the other economic damages? Whatever the amount that adds up beyond that. In other words, the medicals were pretty much, I mean, medical expenses are pretty much they are what they are. I know that, but you're also getting damages for lost earnings, right? Right. The economic loss, the... She didn't discount any of that. No, but she may. What I don't recall is the government's expert on economic loss and the plaintiff's expert on economic loss were probably within $25,000. So what I'm saying is she did not discount anything except a very high pain and suffering because of a preexisting condition. And what I'm saying is I believe she did. Because in this, if Your Honor will bear with me. How can you read the mind of the judge when the judge doesn't bother to put it in an opinion? I can't. But what we had to show was that in any of these cases, as the personal injury claimant, plaintiff, we bear the burden of proving that the defendant was negligent and the negligence caused harm. In this case, the harm is a couple of different things. Number one, a new injury that Dr. Moran testified to at C6-7, an aggravation of a condition in the neck at C5-6, an aggravation of both knees, the carpal tunnel procedures as a result of the neck. That's what our case was about, okay? We were not asking for injury. We were not asking for damages because they caused osteoarthritis. He already had that. And so my point is we put on evidence to show the nature and the extent of the new injury in the neck and the aggravation in the knees and what that caused in real terms, loss of ability to work. And so that's what our proof was. What do you do in terms of Dr. Finger's testimony, which they quote, that says I am only operating on the knees because of osteoarthritis, i.e., not because of this fall but because of the arthritis? Or is that a misquote? Well, it may be part of testimony but not complete testimony. And I would direct Your Honor's attention to Dr. Simon Finger's testimony on pages 1036 through 1041 of the record. And I'll read part of it. In your opinion, is it more likely than not that the February 2nd fall exacerbated his underlying osteoarthritis? He says yes. And that that fall caused him to become significantly more symptomatic? Yes. And is it your opinion, more likely than not, based upon your education training, is it your opinion that it's more likely than not that the February 2, 2012 fall necessitated the surgery that you performed? Yes. And also the left total knee that he'll need in the future? Yes. And then he goes on and he's asked questions about the future replacements that he'll need. What I understood was that the district court said that the government could, if the government could show that he would have reached this same stage of disability because of his preexisting conditions without the accident, they would be entitled to a discount. But she said, you didn't show me the discount. I thought that was what happened in this case. She did ultimately say that, but that's after we have to prove our case, otherwise we don't even get to that point. So the government doesn't have to show that unless we prove our part of the case. And she says, clearly, by her findings, that we proved that he was able to do all these things before and he can't do these things now. That is a friendly question. I think that's the way I read what happened, is that you proved that he was worse off, damaged, disabled after this accident. And the court was willing to listen to the government come in and show that he would have been that disabled anyway, or maybe 80% of that or something. But she said they didn't show that. There's no question about that. And I guess, and I appreciate the friendly question, but my point is they don't even have to, that's an escape hatch for them only if we prove our part of the case. And so she says, you proved your part in how this impacted him. The government has the opportunity to come in and show that he would have ended up at this point anyway. And she says, I don't find that they did that. And those are factual determinations. Those aren't legal determinations. And obviously she's entitled to, her factual determinations are entitled to great weight. Would you please address the difference between latent and patent injuries in this context? Well, I don't know what latent means. In some of these cases, they talk about latent conditions or asymptomatic conditions where a plaintiff has an underlying condition that there are no symptoms manifest. And then there's an accident that doesn't cause the condition but causes it to become symptomatic. And so in the context of some of these cases, that's what's occurred. In the context of some of these cases, like the, I'm going to butcher this, Bukowski, Henderson, Owens, the plaintiffs had some symptomatology. And it appears also actually in the Maurer case the plaintiffs had some symptomatology before the accident, but they were able to carry on their regular activities. And then the incident occurs and causes them to either be disabled or to aggravate or exacerbate their conditions. And the courts, the plaintiffs are entitled, if they prove by preponderance of the evidence, with medical evidence, that the accident aggravated or exacerbated or disabled them, they're entitled to recover for the amount of that aggravation, exacerbation, or disability. And that's, I don't think, I frankly don't think this is a, this isn't unique to this case. This is what happens in many of these cases where the plaintiffs have worked for a long time, have some pain, which is treated symptomatically, but are able to carry on their activities at home and at work, and something happens and they're injured more significantly. And if the judge in this case would have given the jury instructions, like Maurer and so forth, and the jury verdict form would have said, was the defendant negligent, yes, was the defendant's negligence proximate cause of the plaintiff's harm, yes, and did the, and then, you know, obviously list the harm and the amount that you would award, we wouldn't be here, I don't think, because these are the proper legal standards for the court to apply. I think the only gap is this question, who has the burden of proof on aggravation or inevitability or whatever. In my view, based upon the cases, and Maurer spells it out pretty well. Well, I know Maurer spells it out, but goodness gracious, I mean, we're talking about, what is it, 1981 or earlier than that from the Second Circuit, and hardly anything from 668 F. Seconds, so that's way back there, and nothing specific in Benedict or Schoenbaum or the Fifth Circuit since 1964. And I think the reason for that may be, Your Honor, because it's pretty well recognized in this area of practice that the plaintiff bears the burden of proving aggravation, exacerbation, nature and extent of the harm and disability, and if the plaintiff is able to do that, then the burden shifts. If the plaintiff isn't able to do that, then the case is over. The only other thing I'd like you to address quickly, and you can do it quickly, was the exclusion. I personally think she clearly misinterpreted the rules of procedure and misinterpreted Dr. Hageman's testimony. That said, was it harmless error? In my view, Dr. Hageman, in keeping with the court's rules, provided an expert report by the deadline on August 20, 2014. But experts are always allowed to comment on what the other experts have said. I agree. But you got her to exclude it all. No, no. Here's the problem. He did comment on what the other experts said. He said he disagreed with them, in effect. Right. That's fine. Right, exactly, and there's no problem with that. And that testimony came in. What the issue was is that Dr. Hageman wanted to comment on an MRI film that was available to him on August 20, 2014. The defendant, U.S. in their brief, talks about that as newly discovered evidence. If it was newly discovered evidence, he most certainly would have been able to comment on it. It was available to him in August of 2014. They took his deposition for trial two months before trial. I don't understand exactly what you're saying, and I ask you, even if I'm wrong, even if I'm wrong, is it harmless error? Of course, because he was able to comment on it. He was able to provide his opinion. Well, but then she interpreted his opinion as if he had never seen it. So you see, she sort of set up a false premise there, even though she might have excluded it. No, she discounted his testimony. She found him not credible, in part because he'd said something to Dr. Maran. Well, of course you're the treating doctor, or something, which is, you know. Anyway. I don't think her findings or conclusions suggest that she found him not credible because he had anything to say about Dr. Maran. Well, actually she did, but anyway. All right, fine. You've run out of time. Thank you, Your Honor. All right. Mr. Crank? Very briefly, I think there are three points that can dispose of this case. And from what I've heard, Judge Jones gets it. The first, and I won't get into lengthy because I talked about it a lot, is this case is not Marr. Marr was what's called an eggshell plaintiff case, where a person has a latent condition that later exacerbates itself and the burden shifts to the government. This is not an eggshell plaintiff case. This case plaintiff's conditions and injuries were already manifested, and so therefore the court should follow the Fifth Circuit in Henderson. Point one. That's an error of law. Point two, which I think is the critical point, we would not be here today. The government does not often come before a court of appeals, as Judge Dennis pointed out, and say the court was clearly, clearly errored, you know, in that kind of a case. But here you've got more than that. You've got the court actually saying there was no evidence of preexisting conditions except the testimony of Judge Hageman. That's just — it's not deference. That's just clearly wrong, and that was critical to the judge's opinion, because the judge said there was no evidence. She didn't mention any of the plethora of evidence that we pointed out. It's in our brief. It's in our opening brief at pages 1 through 8 and 12 through 14, and in our reply brief. None of that is found in the district court's opinion. In her opinion, when she wrote the paragraph right after dismissing Dr. Hageman's testimony, she said despite awareness of his preexisting condition, in the findings of fact, she again said despite multiple preexisting injuries. And she said although he frequently experienced pain while working, particularly in his knees. And then in a footnote, she said Mr. Kosh had two open surgeries on his right knee, two arthroscopic procedures on his left knee. So it seems like she was aware of these injuries and mentioned it in the findings. First of all, barely aware. I mean, we presented a great deal of evidence, trial exhibits, medical testimonies that went into great length showing the extent of those injuries dating back ten years before this surgery, and all you can find in the opinion is that. That's it. But more important is Judge, and I think the heart of this case, is Judge Jones' point. Judge Jones' point is that what is missing from this opinion, and as plaintiff's counsel concedes, it is their burden. Before you get to your point, Judge Dennis, which is the second exception under Maurer, which doesn't even apply here, they have the burden, plaintiff has the burden, of showing the degree of exacerbation that occurred as a result of the injury. And what is missing in this case is what Judge Jones pointed out. We don't have anywhere in that opinion, do we find, all right, plaintiffs are claiming and plaintiffs seek $10 million. Okay? But let's look at the testimony of Judge, of Dr. Hageman, Dr. Moran, Dr. Finger, Dr. Wilson, Dr. Oshner, all these doctors, and spelled out and say based upon this, this gentleman was in stage osteoarthritis. And therefore, of this $10, $12, $14 million, 70 percent of it has got to be attributed to that preexisting condition. And I'm not going to give an award for that. You do not. That is what is missing. That is what is missing. And that is what plaintiffs, both plaintiffs failed to present and what the district court failed to demand. So to Judge Jones' last question, and we've briefed it at great length. I'm not going to belabor it here. But the limiting of the testimony of our expert was more than just harmless error. Particularly the key point, as Judge Jones pointed out, was they asked the man a hypothetical question. They said, if you didn't look at these x-rays, then would you defer to somebody who did look at the x-rays? And, of course, the man said, yes, if I didn't look at them, then obviously the person who looked at them is in a better position. Our trial lawyer got up to try and rehabilitate the man and say, ah, but slight change here. You did look at the x-rays, didn't you? And that's where she said, no, I'm not going to. I'm not going to let you do that. And she ended up, and again, Judge Prada, it's in her opinion, she said that he conceded that this other doctor was in a better position. Well, he only conceded it under that hypothetical that was not true. So are there any further questions? No, thank you. Okay. Thank you very much. All right. The court will stand in recess until 12 o'clock.